IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ALEX JEROME THOMAS, JR.     PLAINTIFF

v.     Civil No.: 6:19-CV-06108

WENDY KELLEY (Arkansas Department of Correction), HEALTH SERVICES ADM. JASON M. KELLEY, JAN DOE/NURSE AMANDA, MR. HARDER (Security Officer, ORCU), MR. EARL (Warden ORCU), MR. JACKSON (Assistant Warden, ORCU), DIRECTOR OF NURSING CRYSTAL MCCOY, and NURSE CASSANDRA BRANSON     DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action provisionally filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

Currently before the Court is a Motion for Summary Judgment for Want of Administrative Exhaustion by Defendants Jason Kelley, McCoy, and Branson ("Medical Defendants"). (ECF No. 23). Also before the Court is a Motion for Summary Judgment Motion on the Issue of Exhaustion by Defendants Wendy Kelley, Earl, Jackson, and Harder ("ADC Defendants") (ECF No. 48), and a Motion to Dismiss[1] by ADC Defendants Wendy Kelley, Earl, Jackson. (ECF No. 18).

---

[1] The ADC Defendants noted that the Motion to Dismiss was still pending, and, by filing their Motion for Summary Judgment, did not abandon their arguments in the Motion to Dismiss. (ECF No.49 at 9 n.2)

1

## I. BACKGROUND

Plaintiff filed his Complaint on September 5, 2019. (ECF No. 1). Plaintiff alleges the denial of pain medication, due in part to a non-functioning emergency call button, while incarcerated in the Arkansas Department of Correction ("ADC") SNU Hospital in the Ouachita River Unit. (*Id*. at 5-13). Plaintiff brings his first claim, for denial/delay of pain medication, against Defendants Jane Doe/Nurse Amanda,[2] Harder, Jason Kelley, McCoy, and Branson. (ECF No. 1 at 5). Plaintiff alleges he underwent oral surgery on June 13, 2019. (*Id*. at 6). This surgery consisted of "having (2) two metal plates screwed into [his] lower jaw." (*Id*.). Plaintiff returned to the ADC SNU hospital at approximately 7:45 pm on June 13, 2019, and was placed in a locked hospital isolation room. (*Id*. at 6, 9). He alleged he was not given any post-operative pain medication until approximately 3:00 am on June 14, 2019, leaving him in pain for eight hours or more. (*Id*.). Plaintiff alleges he repeatedly asked Nurse Amanda and Defendant Harder for help, including asking Harder to bring a sergeant or lieutenant to sign and address his emergency medical grievance, but none was forthcoming. (*Id*. at 6-7).

Plaintiff characterizes his second claim concerning the nonfunctional emergency call buttons in his hospital room as one for cruel and unusual punishment. (*Id*. at 8). Plaintiff brings this claim against Defendants Earl, Jackson, Jason Kelley, Wendy Kelley, and McCoy. When it became apparent that neither Jane Doe/Nurse Amanda and Defendant Harder were responding to his requests for post-operative pain medication, Plaintiff then pressed the emergency help buttons in his room, but no one came. (*Id*. at 7). Knocking on the door to his room failed to get anyone's attention due to the distance between the hospital isolation room and the nurse's station. (*Id*. at 10). Plaintiff finally

---

[2] Plaintiff states he does not know the full name of this nurse, but states that "she told him to call her Nurse Amanda." (ECF No. 1 at 5). Plaintiff further alleges that he does not know if this is her real name, but she is the nurse that brought him his pain medication on the morning of June 14, 2019. He believes that the nurses must sign the medication out so there should be documentation somewhere.

resorted to putting a handwritten sign in the window of his room asking for someone to help him with his post-operative pain. (*Id*. at 10). Plaintiff alleges it took eight or more hours to receive pain medication; he did not receive any until approximately 3:00 am. (*Id*. at 6).

Plaintiff alleges that he filed two Grievances concerning his post-operative care, OR-19-00663 and OR-19-00664, and both were found to be with merit. (*Id*. at 18). OR-19-00664 was filed on June 14, 2019, and covers both the delay in providing pain medication and the non-functioning emergency call buttons. (*Id*. at 16). The response to OR-19-00664 stated that "[s]taff will be educated on the proper channels to follow concerning oral surgery patients to ensure matters such as this do not occur in the future." (*Id*. at 17). OR-19-0063 was filed on June 16, 2019. (ECF No. 48-5). The response to OR-19-00663 stated that the ADC was aware of the problem with the emergency call system and was working on it. (ECF Nos. 1 at 8, 18; 24-2 at 1).

Plaintiff proceeds against Defendants Jane Doe/Nurse Amanda, Harder, Jason Kelley, McCoy, and Branson for his denial of pain medication and non-functioning emergency call buttons in both their official and personal capacities. (*Id*. at 5). He proceeds against Defendants Earl, Jackson, Jason Kelley, Wendy Kelley, and McCoy for the emergency call button issue in their official capacity only. (*Id*. at 8). He seeks compensatory and punitive damages. He further asks that medical equipment and medical living areas in the ADC be adjusted to meet applicable state and federal law and regulations, and that all medical staff is properly trained regarding the treatment of oral surgery patients. (*Id*. at 13). The Court will interpret this as a claim for prospective injunctive relief. As Plaintiff alleges Defendant Harder ignored an emergency medical grievance while working in the ADC hospital, the Court will infer this training request to include Defendant Harder.

The ADC Defendants filed their Motion to Dismiss on November 25, 2019. (ECF No. 18). The Medical Defendants filed their Motion for Summary Judgment on December 24, 2019. (ECF

3

No. 23). Plaintiff filed his Response on February 24, 2020. (ECF Nos. 32, 33, 34). The Medical Defendants filed their Reply on March 2, 2020. (ECF No. 36).

The ADC Defendants filed their Motion for Summary Judgment on April 21, 2020. (ECF No. 48). When Plaintiff failed to file his Response as directed, a Show Cause Order was entered on May 19, 2020. (ECF No. 52). Plaintiff filed his Summary Judgment Response on May 21, 2020. (ECF Nos. 53, 54). He filed a Response to the Show Cause Order on May 28, 2020, stating he had been ill with flu-like symptoms. (ECF No. 56). The ADC Defendants filed their Reply on May 26, 2020. (ECF No. 55).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the

facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. ANALYSIS

The Medical Defendants argue summary judgment in their favor is appropriate because Plaintiff failed to exhaust his administrative remedies against them before initiating this lawsuit. (ECF No. 23). They argue Plaintiff filed only medical two grievances during the relevant time period: OR-19-00663 and OR-19-00664. Because he failed to file grievance appeals for either one of them, he failed to exhaust his administrative remedies. (ECF No. 25 at 6).

The ADC Defendants argue summary judgment in their favor is appropriate because 1.) Plaintiff failed to file grievance appeals for either OR-19-00663 or OR-19-00664, thus he failed to exhaust his administrative remedies; and 2.) Plaintiff failed to identify ADC Defendants Wendy Kelley, Earl, or Jackson in either grievance as required by the ADC grievance policy, thus he failed to exhaust his administrative remedies as to those parties. (ECF No. 48 at 2).

Plaintiff raises several arguments in his Reponses, one of which the Court finds persuasive.[3] Specifically, Plaintiff argues that the ADC grievance policy requires an inmate to provide a reason or reasons for his disagreement with the response to his first formal grievance in order to file an appeal. As Plaintiff's grievances were found to be with merit, and his issues addressed, Plaintiff thought he had no grounds for a grievance appeal. (ECF Nos. 33 at 3; 53 at 6-7). Accordingly, he believed he had received all the relief possible at the administrative level. (ECF No. 33 at 6; 53 at 6).

Defendants' Replies both argue that Plaintiff was clearly not satisfied with the result of the grievance because he filed this lawsuit. Further, they argue the Prison Litigation Reform Act Notice

---

[3] The Court will, therefore, not address the other arguments.

in the ADC grievance policy clearly tells inmates they must satisfy all levels of the grievance process before filing a lawsuit. (ECF Nos. 36, 55).[4]

### A. Failure to Appeal Favorable Grievance Responses

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal quotation marks and citation omitted). The "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. A prisoner's remedies are exhausted "when [the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012). The purpose of the exhaustion requirement is to "give the agency a fair and full opportunity to adjudicate their claims." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "Proper exhaustion demands compliance with an agency's deadlines." *Id*.

---

[4] The ADC Defendants also cite to *Mason v. Corizon*, Case No. 6:13-06110, 2014 WL 4771862, at *2 (W.D. Ark. Sept. 24, 2014), noting that Mason raised an administrative exhaustion argument concerning favorable grievance responses similar to Plaintiff's, and the argument was rejected in the first summary judgment motion in the case. (ECF No. 55 at 3-4). Defendants are correct that Mason argued that the receipt of a favorable grievance response excused the need to appeal the grievance. (*Mason v. Corizon*, Case No. 6:33-06110, ECF Nos. 31 at 3 ¶ 5; 36 at 18; 37 at 11). Mason's argument is distinguishable from that raised in this case because he relied upon cases in other states and circuits rather than the ADC policy language. Further, the case, as well as the decisions in it, pre-date the additional guidance provided by the Supreme Court in *Ross v. Blake*, 136 S. Ct. 1850, 1853-54 (2016), discussed *infra*. The Court also notes that in the Report and Recommendation for the second summary judgment motion the court in *Mason* was also troubled by inconsistent and confusing language in the ADC grievance policy. Specifically, the court found "the use of different day measurements at the various steps of the grievance process, without any stated or apparent functional purpose for use of the different measurements" created ambiguities as to the calculation of grievance deadlines. (*Mason v. Corizon*, Case No. 6:13-06110, ECF No. 71 at 14 n.2.).

A prisoner is only required to exhaust those grievance procedures which are available. *Jones,* 549 U.S. at 218; *Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005). "Available remedies are capable of use for the accomplishment of a purpose: immediately utilizable and accessible." *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015) (internal quotations and modifications omitted). In 2016, the Supreme Court provided additional guidance as to when an administrative remedy is available for a prisoner's use. *Ross v. Blake*, 136 S. Ct. 1850, 1853-54 (2016). The Supreme Court recognized at least three circumstances where an administrative is not "capable of use" and therefore unavailable: "(1) where "it operates as a simple dead end—with officers unable or consistently unwilling to provide *any* relief to aggrieved inmates,"; (2) where the "administrative scheme" is "so opaque" as to be practically "incapable of use,"; and (3) where "administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Muhammad v. Mayfield*, 933 F.3d 993, 1000 (8th Cir. 2019) (citing *Ross*, 136 S. Ct. at 1858-60) (internal quotations and citations omitted).

Administrative Directive 14-16 is the ADC grievance policy controlling for this case. (ECF No. 48-2). Defendants argue that the PLRA Notice paragraph at IV(N) in the grievance policy makes it clear to inmates that they must continue through all steps of the grievance process, including an appeal, in order to exhaust their remedies prior to filing a lawsuit. This paragraph states:

> Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit and Claims Commission claim. If this is not done, their lawsuits or claims may be dismissed immediately.
>
> Inmates must attach a copy of the Chief Deputy/Deputy/Assistant Director's response to any petition or complaint; otherwise, the court or commission may dismiss the case without notice.
>
> Inmates are also advised that they shall be subject to paying filing fees in Federal Court pursuant to the Prison Litigation Reform Act of 1996.

(ECF No. 48-2 at 17-18).

Plaintiff argues that he received a favorable response to both of his grievances. Because the ADC policy requires an inmate to detail his disagreement in order to appeal, he thought he was prohibited from doing so after a favorable response. An appeal is defined in AD 14-16 as "a written request to a Chief Deputy/Deputy/Assistant Director for further action to resolve the issue or complaint in the grievance *based upon the inmate's belief that the issue has not been resolved at the Unit level*." (ECF No. 48-2 at 2) (emphasis added). Paragraph IV(G) details the required steps to appeal a unit level grievance: "After receiving a response from the Warden, the Health Services Administrator (HSA), the Mental Health Supervisor, or designees, *if the inmate is not satisfied*, he or she may appeal within five (5) working days to the appropriate Chief Deputy/Deputy/Assistant Director who will attempt to resolve the matter or assign an appropriate staff member to do so." (ECF No. 48-2 at 11) (emphasis added). Paragraph IV(G)(2) states in part "*To complete the appeal*, *the inmate must state a reason for disagreeing*, and must date, sign, and write the inmate's ADC number on the attachment being appealed." (ECF No. 48-2 at 11) (emphasis added).

AD 14-16 includes copies of the forms to be used by inmates for grievances. The forms display the following language. To progress from the Step One informal grievance, to a Step Two formal grievance, an inmate must state why "*the issue was not resolved*." (ECF No. 48-2 at 19). Inmates are advised that "*if they disagree*" with the rejection of a grievance as non-grievable, frivolous, etc. they may appeal the rejection. (ECF No. 48-2 at 20). Of particular note in this case is the Health Services Response appeal form, which states: "*If you are not satisfied with this response, you may appeal this decision* within five working days. . ." (ECF No. 48-2 at 22). In all capital letters, the form then directs the inmate to state the following: "**WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE?**" (ECF No. 48-2 at 22).

Thus, threaded throughout AD 14-16 is language which requires an inmate to indicate why they disagree with the grievance response at the unit level, or why the issue grieved has not been

resolved satisfactorily to appeal ("disagreement language"). This includes the grievance forms an inmate actually has in hand when submitting a grievance or grievance appeal. Which further begs the question: Why would an inmate appeal a response which gave him what he requested unless otherwise advised? Nowhere in the ADC policy or on the forms is language which advises an inmate that he must appeal a favorable response in order to exhaust his administrative remedies. At best, the disagreement language is confusing. At worst, it could be interpreted as a deliberate obfuscation intended to prevent inmates who submitted meritorious claims from accessing the federal courts. (ECF No. 48-2 at 3). Given the pervasive nature of the disagreement language in the policy and on the forms, tacking a PLRA Notice paragraph at the end of the procedure section on page eighteen is insufficient to counteract the policy language. Instead, a reasonable inference is raised that the ADC policy fits the second *Ross* category because it is "so opaque" as to be practically "incapable of use" concerning exhaustion after a favorable grievance response.

Nor is this Court the first federal court to find this ADC policy language troubling. The Eastern District of Arkansas addressed the identical argument and ADC language in *Carillo v. Kelley*, Case No. 1:15CV00113 JLH/PSH (E.D. Ark., Feb. 22, 2016). In recommending that the motion for summary judgment on the issue of exhaustion be denied, the court stated:

> The language highlighted above was created and/or adopted by the ADC. A fair reading of it would lead an inmate to believe that he is not required to appeal findings at step two with which he is satisfied in order to exhaust his remedies. The Court cannot with good conscience recommend dismissal of a case for failure to exhaust when the ADC procedures cited above are less than clear.

*Carrillo v. Kelley*, 1:15CV00113 JLH/PSH, 2016 WL 1051073, at *3 (E.D. Ark. Feb. 22, 2016), *report and recommendation adopted*, 1:15CV00113 JLH/PSH, 2016 WL 1050268 (E.D. Ark. Mar. 16, 2016).

Likewise, this Court cannot with good conscience recommend dismissal of this case for Plaintiff's failure to appeal favorable grievance responses when the ADC procedures cited above are

9

less than clear. As the Medical Defendants raised this as their sole argument for summary judgment, they are not entitled to summary judgment as a matter of law.

### B. ADC Defendants

#### 1. Failure to Name Defendants - ADC Defendants Wendy Kelley, Earl, and Jackson

In their Motion for Summary Judgment, the ADC Defendants further argue Plaintiff failed to identify ADC Defendants Wendy Kelley, Earl, or Jackson in either grievance as required by the ADC grievance policy, and only identified Defendant Harder in one, thus he failed to exhaust his administrative remedies as to those parties for those claims. Specifically, they argue that in OR-19-00664 (denial/delay of pain medication and non-functioning emergency buttons), Plaintiff identified only Defendant Harder. (ECF No. 49 at 2-3). They further argue that in OR-19-00663 (non-functioning emergency buttons), Plaintiff failed to identify any ADC employee by name, title, workstation, schedule, or any other means through which the ADC could have identified them. (ECF No. 49 at 3).

AD 14-16 at IV(E)(2) states:

> On the Unit Level Grievance Form (Attachment I), only in the space provided, the inmate should write a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form.

(ECF No. 48-2 at 5-6). This language is not ambiguous. Plaintiff, therefore, failed to exhaust his administrative remedies as to all ADC Defendants for OR-19-00663, and against Wendy Kelley, Earl, and Jackson for OR-19-00664.

Accordingly, Defendants Wendy Kelley, Earl, and Jackson are entitled to summary judgment as a matter of law for both grievances. Defendant Harder is entitled to summary judgment for OR-19-00663. Because these dismissals are based on a failure to exhaust administrative remedies, they

are required to be without prejudice.[5] As Defendant Harder was named in OR-19-00664, Plaintiff's claims outlined there remain against him.

### 2. Official Capacity Claims

In their Motion to Dismiss, ADC Defendants Wendy Kelley, Earl, and Jackson argue that Plaintiff's official capacity claims against them are barred by sovereign immunity. They further argue that Plaintiff's claims against them were brought based solely on the theory of *respondeat superior*. (ECF No. 19 at 3-8). Defendant Harder was not included as one of the Defendants bringing this motion; however, as he is identified as an ADC employee, the Court will *sua sponte* analyze the official capacity claims as to him as well.

To the extent Plaintiff requests monetary damages, his official capacity claims against Defendants Kelley, Earl, Jackson, and Harder are barred by sovereign immunity. "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work." *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir.1998). Thus, Plaintiff's official capacity claims against the ADC Defendants are claims against the ADC. *Id.* The ADC is a state agency. *See Fegans v. Norris,* 351 Ark. 200, 206, 89 S.W.3d 919 (2002). States and state agencies are not "persons" subject to suit under § 1983. *Howlett v. Rose,* 496 U.S. 356 (1990)*; Will v. Mich. Dept. of State Police*, 491 U.S. 58 (1989); *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). "This bar exists whether the relief sought is legal or equitable." *Williams v. Missouri,* 973 F.2d 599, 599 -600 (8th Cir. 1992) *(citing Papasan v. Allain,* 478 U.S. 265, 276 (1986)). "Congress did not abrogate constitutional sovereign immunity when enacting the law that was to become section 1983." *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991) (*citing Quern v. Jordan,* 440 U.S. 332, 342 (1979)). The dismissal of

---

[5] Claims that are dismissed for failure to exhaust administrative remedies should be dismissed without prejudice. *See Sergent v. Norris*, 330 F.3d 1084, 1085 (8th Cir. 2003).

Plaintiff's official capacity claims against these Defendants for monetary damages should therefore be with prejudice.[6]

To the extent that Plaintiff's relief request for an "adjustment" of staff training and facilities safety in the ADC hospital could be interpreted to be one for prospective injunctive relief, however, his claims are eligible for an exception to sovereign immunity pursuant to *Ex Parte Young,* 209 U.S. 123 (1908). The failure to name Defendants Wendy Kelley, Earl, and Jackson in his grievances, however, makes this exception unavailable as to these Defendants. It remains available as to Defendant Harder, who was named in OR-19-00664.

## IV. CONCLUSION

Accordingly, I recommend:

1. The Motion for Summary Judgment for Want of Administrative Exhaustion by Defendants Jason Kelley, McCoy, Branson, and Nurse Amanda ("Medical Defendants") (ECF No. 23) be **DENIED**.

2. The Motion for Summary Judgment Motion on the Issue of Exhaustion by Defendants Wendy Kelley, Earl, Jackson, and Harder ("ADC Defendants") (ECF No. 48) be **GRANTED** as to Defendants Wendy Kelley, Earl, Jackson.

3. The Motion for Summary Judgment Motion on the Issue of Exhaustion by the ADC Defendants (ECF No. 48) be **GRANTED** as to Defendant Harder for the claims detailed in OR-19-00663 (non-functioning emergency buttons).

4. The Motion for Summary Judgment Motion on the Issue of Exhaustion by the "ADC Defendants" (ECF No. 48) be **DENIED** as to Defendant Harder for the claims detailed

---

[6] Claims dismissed based on the doctrine of sovereign immunity are generally dismissed with prejudice. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (providing the doctrine of sovereign immunity prevents a plaintiff from obtaining monetary damages against state officials named in their official capacities); *but see Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997) (clarifying that sovereign immunity does not bar monetary damages against state officials in their individual capacities, or prospective injunctive relief against state officials in their official capacities).

in OR-19-00664 (denial/delay of pain medication and non-functioning emergency buttons).

5. The Motion to Dismiss by ADC Defendants Wendy Kelley, Earl, Jackson (ECF No. 18) should be **GRANTED** as to Plaintiff's official capacity claims against Defendants Wendy Kelley, Earl, Jackson. These Defendants should be **DISMISSED WITH PREJUDICE** from the case.

6. The Motion to Dismiss by ADC Defendants Wendy Kelley, Earl, Jackson (ECF No. 18) be **GRANTED** as to Defendant Harder regarding Plaintiff's official capacity claims for monetary relief. This claim should be **DISMISSED WITH PREJUDICE**.

7. The Motion to Dismiss by ADC Defendants Wendy Kelley, Earl, Jackson (ECF No. 18) be **DENIED** as to Defendant Harder regarding Plaintiff's official capacity claims for prospective injunctive relief. These claims are limited to the claims detailed in OR-19-00664 (denial/delay of pain medication and non-functioning emergency buttons).

Thus, the following parties and claims should remain:

1. Plaintiff's personal and official capacity claims for denial/delay of pain medication and non-functioning emergency buttons (Claim One) against Medical Defendants Jason Kelley, McCoy, Branson, and Nurse Amanda. [7]

2. Plaintiff's official capacity claims for non-functioning emergency buttons (Claim Two) against Medical Defendants Jason Kelley and McCoy.

---

[7] The Court notes that service has not yet been successful concerning Nurse Amanda. This issue will be addressed by separate order.

13

3. Plaintiff's personal capacity claims against ADC Defendant Harder for denial/delay of pain medication and non-functioning emergency buttons (Claim One).

4. Plaintiff's official capacity claim for prospective injunctive relief against ADC Defendant Harder concerning denial/delay of pain medication and non-functioning emergency buttons (Claim One).

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **31st day of July 2020**.

/s/ *Barry A. Bryant*
———————————————
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE