IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ALEX JEROME THOMAS, JR.                                                                    PLAINTIFF

v.                                            Case No. 6:19-cv-6108

WENDY KELLEY (Arkansas Department of
Correction), JASON M. KELLEY; JANE DOE/
NURSE AMANDA; MR. HARDER (Security
Officer, ORCU); MR. EARL (Warden, ORCU);
MR. JACKSON (Assistant Warden, ORCU);
CRYSTAL MCCOY; and NURSE CASSANDRA
BRANSON                                                                                    DEFENDANTS

## ORDER

Before the Court is the Report and Recommendation filed July 31, 2020, by the Honorable Barry A. Bryant, United States Magistrate Judge for the Western District of Arkansas. (ECF No. 59). Judge Bryant recommends that the Court grant in part and deny in part Defendants' motion to dismiss (ECF No. 18), and motions for summary judgment (ECF Nos. 23, 48). Plaintiff has not objected and his time to do so has passed. Defendants object to the extent that Judge Bryant recommends denial of their motions. The Court finds the matter ripe for consideration.

### I. BACKGROUND

On September 5, 2019, Plaintiff filed this case pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights while he was incarcerated in the Arkansas Department of Correction ("ADC"), Ouachita River Unit. Specifically, Plaintiff alleges that, after he underwent jaw surgery, Defendants Jane Doe/Nurse Amanda, Harder, Jason Kelley, McCoy, and Branson ignored his requests for pain medication for more than eight hours. Plaintiff also alleges that, post-surgery, he pressed the emergency-call button in his hospital room, but the button did not work, and he was unable to get anyone's attention for help with his post-operative pain.

Plaintiff seeks compensatory and punitive damages, along with injunctive relief.

Plaintiff filed two grievances that are relevant to the above allegations: OR-19-00663 and OR-19-00664. He filed grievance OR-19-00664 on June 14, 2019, complaining of both the delay in providing pain medication and the non-functioning emergency-call button. (ECF No. 24-2, p. 6). Grievance OR-19-00664 identifies only Defendants Harder and Nurse Amanda as being involved in the complained-of circumstances. The response to OR-19-00664 indicates that "[s]taff will be educated on the proper channels to follow concerning oral surgery patients to ensure matters such as this do not occur in the future." (ECF No. 24-2, p. 3).[1] Plaintiff did not appeal this response.

On June 19, 2019, Plaintiff filed grievance OR-19-00663, complaining again about the non-functioning emergency-call button in his hospital room. (ECF No. 24-2, p. 3). Grievance OR-19-00663 does not identify any of the Defendants as being involved in the complained-of circumstances. The response to that grievance indicates that ADC was aware of the problem with the emergency call system and was working on it. Plaintiff did not appeal this response.

Plaintiff filed this lawsuit on September 5, 2019. On November 25, 2019, Defendants Wendy Kelley, Earl, and Jackson filed a motion to dismiss, arguing that Plaintiff's official-capacity claims against them must be dismissed pursuant the doctrine of sovereign immunity. On December 24, 2019, Defendants Jason Kelley, McCoy, and Branson (collectively, "the Medical Defendants") filed a motion for summary judgment, arguing that Plaintiff failed to fully exhaust his administrative remedies before bringing the claims against them. On April 21, 2020, Defendants Wendy Kelley, Earl, Jackson, and Harder (collectively, "the ADC Defendants") filed a motion for summary judgment, making substantially the same argument.

---

[1] All citations to specific pages in record filings are to the document's page number when viewed in a .pdf file viewer, not to page numbers on the physical filings.

On July 31, 2020, Judge Bryant issued the instant Report and Recommendation regarding the three above-discussed motions. He recommends that the Court grant the motion to dismiss, grant in part and deny in part the ADC Defendants' summary judgment motion, and deny the Medical Defendants' summary judgment motion. The ADC Defendants and Medical Defendants have filed a joint objection to the portions of the Report and Recommendation that recommend partial or outright denial of their motions.

## II.  DISCUSSION

"[T]he specific standard of review depends, in the first instance, upon whether or not a party has objected to portions of the report and recommendation." *Anderson v. Evangelical Lutheran Good Samaritan Soc'y*, 308 F. Supp. 3d 1011, 1015 (N.D. Iowa 2018). Generally, "objections must be timely and specific" to trigger *de novo* review. *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990). In the absence of objections, the Court "need only satisfy itself that there is no clear error on the face of the record." Fed. R. Civ. P. 72 advisory committee's note, subd. (b).

As discussed above, Judge Bryant has made findings regarding three dispositive motions: (1) the motion to dismiss claims against certain defendants based on sovereign immunity, (2) the Medical Defendants' motion for summary judgment based on failure to exhaust administrative remedies; and (3) the ADC Defendants' similar summary judgment motion. The Court will begin by addressing the motion to dismiss. Then the Court will take up the summary judgment motions, which concern the same issue.

### A. Motion to Dismiss

Defendants Wendy Kelley, Earl, and Jackson seek dismissal of Plaintiff's official capacity claims against them because they are employees of a state agency, and thus, are entitled to

sovereign immunity. Judge Bryant agrees that they are entitled to sovereign immunity and recommends that the Court dismiss Plaintiff's official capacity claims against Defendants Wendy Kelley, Earl, and Jackson with prejudice. Judge Bryant also noted that, although the motion to dismiss was not filed by Defendant Harder, nor did it discuss him or seek relief on his behalf, he is nonetheless alleged to be an ADC employee. Conducting a *sua sponte* analysis, Judge Bryant recommends that Defendant Harder is likewise entitled to sovereign immunity, and thus, Plaintiff's official capacity claims for money damages against him should be dismissed.[2] Judge Bryant noted further that, liberally construed, Plaintiff's complaint appears to also set out an official capacity claim for prospective injunctive relief against Defendant Harder, which should survive as a viable exception to sovereign immunity pursuant to *Ex Parte Young*, which permits prospective injunctive relief against state officials for ongoing federal law violations. 209 U.S. 123 (1908).

No party has objected to these recommendations. Being well and sufficiently advised, and finding no clear error on the face of the record, the Court will adopt the Report and Recommendation to the extent that it recommends that the Court grant the motion to dismiss (ECF No. 18) and dismiss with prejudice the official capacity claims against Defendants Wendy Kelley, Earl, and Jackson. *See Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997) (utilizing sovereign immunity in dismissing official capacity claims for money damages against state employees in a section 1983 case). The Court will also adopt the Report and Recommendation to the extent that it recommends the *sua sponte* dismissal with prejudice of the official capacity claims for money damages against Defendant Harder.[3] However, Plaintiff's official capacity claim for

---

[2] A court may *sua sponte* dismiss a section 1983 claim without giving the parties notice and a chance to respond if the dismissal does not precede service of process and the claims obviously fail on the facts alleged. *Smith v. Boyd*, 945 F.2d 1041, 1042-43 (8th Cir. 1991). Defendant Harder has been served and, as Judge Bryant discussed, Plaintiff clearly alleged that Defendant Harder is an ADC employee. Plaintiff's official capacity claims obviously fail on the facts alleged due to sovereign immunity because he seeks money damages against an employee of a state agency.

[3] The Report and Recommendation recommends that the motion to dismiss (ECF No. 18) be granted to effectuate this

prospective injunctive relief against Defendant Harder will remain.

### B. Summary Judgment Motions

The Medical Defendants and the ADC Defendants have each moved for summary judgment on all claims against them because Plaintiff failed to fully exhaust his administrative remedies before filing this case. Judge Bryant makes various findings and recommendations as to these motions. In short, he recommends that the Court deny the Medical Defendants' motion and grant in part and deny in part the ADC Defendants' motion. Before separately addressing those motions, the Court will first recount the applicable law regarding exhaustion of administrative remedies.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]o properly exhaust administrative remedies[,] prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Jones v. Bock*, 599 U.S. 199, 218 (2007) (internal quotation marks omitted). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

An inmate's remedies are exhausted "when [the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits." *Hammett v. Cofield*, 681

---

dismissal. However, as noted above, the motion to dismiss did not discuss Defendant Harder or request any relief on his behalf, so any relief granted or denied to him with respect to sovereign immunity is more appropriately done *sua sponte*.

5

F.3d 945, 947 (8th Cir. 2012). If an inmate has not fully exhausted his administrative remedies when he files his complaint, "dismissal is mandatory." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003).

The PLRA, however, requires exhaustion of only "such administrative remedies as are available." 42 U.S.C. § 1997e(a). The availability of a remedy is about more than just whether an administrative procedure is "on the books." *Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018) (citing *Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1859 (2016)). Available remedies are "capable of use for the accomplishment of a purpose" and that "which is accessible or may be obtained." *Booth v. Churner*, 532, U.S. 731, 737-38 (2001). A remedy is unavailable: (1) when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief;" (2) when the "administrative scheme might be so opaque that it becomes, practically speaking, incapable of use;" or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, ___ U.S. ___, 136 S. Ct. at 1859-60 (2016). An inmate's subjective beliefs regarding exhaustion are irrelevant in determining whether administrative procedures are available. *See Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

The ADC grievance policy in effect at the time of the alleged constitutional violations was Administrative Directive 14-16. (ECF No. 48-2). That directive sets out a three-step process for inmates to exhaust their administrative remedies. The first step is for an inmate to file an informal resolution with a designated problem solver within fifteen days of the incident. *Id.* at 5. The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." *Id.* at 5-6. The problem solver investigates the complaint and

6

provides a written response within three working days. *Id.* at 8. If the inmate is unsatisfied with the response, or receives no response within the time allowed, he may proceed to step two by filing a formal grievance. *Id.* at 7-8. The warden (or health services administrator, for medical grievances) must then respond in writing to the grievance within twenty working days. *Id.* at 8-9. If the inmate is unsatisfied with the response, or receives no response within the time allowed, he may proceed to step three by appealing to the appropriate ADC chief deputy/deputy/assistant director. *Id.* at 9. A written decision or rejection of an appeal is the end of the grievance process. *Id.* at 12. Administrative Directive 14-16 also includes the following warnings:

> Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit and Claims Commission claim. If this is not done, their lawsuits or claims may be dismissed immediately.
>
> . . .
>
> Grievances must specifically name each individual involved for a proper investigation and response to be completed by the ADC. . . . Inmates who fail to name all parties during the grievance process may have their lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties.

*Id.* at 5-6, 17.

With that framework in mind, the Court will separately take up Defendants' summary judgment motions.

### 1. The ADC Defendants' Summary Judgment Motion

The ADC Defendants contend that all of Plaintiff's claims against them should be dismissed because Plaintiff failed to exhaust his administrative remedies in two ways before filing this lawsuit. First, they argue that Plaintiff failed to name Defendants Wendy Kelley, Earl, and Jackson in any grievance and failed to name Defendant Harder in grievance OR-19-00663. Thus, they contend that he failed to exhaust his administrative remedies with respect to any grievance that did not name them. Second, they argue that Plaintiff failed to appeal either grievance to the

conclusion of the ADC's grievance process, so he failed to exhaust his administrative remedies with respect to all of his claims against the ADC Defendants before filing this lawsuit.

Judge Bryant agrees that Plaintiff failed to name Defendants Wendy Kelley, Earl, and Jackson in either of the grievances he filed. Thus, Judge Bryant finds that Plaintiff failed to exhaust his administrative remedies as to Defendants Wendy Kelley, Earl, and Jackson, who are consequently entitled to summary judgment. Judge Bryant also finds that Plaintiff failed to name Defendant Harder in grievance OR-19-00663, so Plaintiff's claims against Defendant Harder that are related to grievance OR-19-00663 should likewise be dismissed for failure to exhaust. Judge Bryant recommends that those unexhausted claims be dismissed without prejudice.

The ADC Defendants' objections indicate that they have no issue with these findings and recommendations. Furthermore, Plaintiff has not objected. Being well and sufficiently advised, and finding no clear error on the face of the record, the Court finds that the Report and Recommendation should be adopted to the extent that it recommends the dismissal of all of Plaintiff's individual capacity claims against Defendants Wendy Kelley, Earl, and Jackson for failure to exhaust, and the dismissal of Plaintiff's individual capacity claims against Defendant Harder related to grievance OR-19-00663 for the same reason. Those claims will be dismissed without prejudice. *See Bumgardner v. Whaley*, No. 5:09-cv-0345-BSM-JJ, 2011 WL 1496184, at \*3 (E.D. Ark. Jan. 6, 2011), *report and recommendation adopted*, No. 5:09-cv-0345-BSM, 2011 WL 1496181 (E.D. Ark. Apr. 20, 2011).

The main issue of contention relates to Plaintiff's grievance OR-19-00664, which specifically names Defendant Harder as being involved in the complained-of circumstances. It is undisputed that Plaintiff received a response to that grievance, which the responding officer found to have merit and indicated that the "[s]taff will be educated on the proper channels to follow

8

concerning oral surgery patients to ensure matters such as this do not occur in the future."   (ECF No. 24-2, p. 3).  Plaintiff did not appeal this response and, in doing so, did not pursue the ADC grievance process to its final stage.

The ADC Defendants argue that Plaintiff failed to fully exhaust his administrative remedies because he failed to appeal the grievance to the final stage and receive a written decision.  Plaintiff argues that he did not need to appeal the grievance response because he received a favorable response, and the ADC policy indicates that grievances should be appealed when the inmate is unsatisfied with the response received, or if no response is received at all.  In other words, Plaintiff argues that ADC policy did not make clear that he needed to appeal a favorable grievance response, so his administrative remedies were unavailable to him.

Judge Bryant found Plaintiff's argument persuasive, reasoning that the ADC's Administrative Directive 14-16 does not make clear to inmates that, even if they receive favorable responses to their grievances, they must nonetheless appeal the favorable responses to the conclusion of the grievance procedure in order to fully exhaust all administrative remedies.  Thus, Judge Bryant finds that the ADC's Administrative Directive 14-16 is "so opaque" as to be practically "incapable of use" with respect to exhaustion of a favorable grievance response. Consequently, Judge Bryant finds that Plaintiff's administrative remedies were unavailable to him, so the ADC Defendants' summary judgment motion regarding exhaustion should be denied to the extent that it seeks dismissal of Plaintiff's claims against Defendant Harder as set out in grievance OR-19-00664.

The ADC Defendants object.  They argue first that Administrative Directive 14-16 does, in fact, make clear to inmates that their administrative remedies are not fully exhausted unless the inmate receives a written decision at the third-step appeal level.  They argue further that the

directive advises inmates that they must fully exhaust their remedies as a precondition to filing a federal civil rights lawsuit. They concede that the directive does not explicitly state that an inmate must appeal a favorable response to a grievance in order to fully exhaust, but they point to other cases in which inmates did so, nonetheless. *See Green v. Burl*, No. 5:17-cv-0074-JLH/PSH, 2018 WL 3018213, at *2 (E.D. Ark. May 24, 2018) (finding full exhaustion where the inmate appealed a favorable grievance response to the conclusion of the ADC grievance process and described his reason for appeal as "[c]ompleting my remedies"), *report and recommendation adopted*, No. 5:17-cv-0074-JLH/PSH, 2018 WL 3016916 (E.D. Ark. June 15, 2018). They also argue that requiring full exhaustion, even when an inmate receives a favorable response at an intermediary stage, furthers the PLRA's policy objective of making prison officials aware of internal problems and gives them the opportunity to address any issues.

The Eighth Circuit does not appear to have discussed whether the ADC's Administrative Directive 14-16 makes clear that inmates must appeal a favorable grievance response to the conclusion of the grievance process to fully exhaust. District courts to address the issue have done so with mixed results.

One train of thought is that the directive is, at best, too confusingly worded to put a reasonable inmate on notice that, to fully exhaust, he must appeal favorable grievance responses. *Carrillo v. Kelley*, No. 1:15-cv-0113-JLH/PSH, 2016 WL 1051073, at *3 (E.D. Ark. Feb. 22, 2016), *report and recommendation adopted*, No. 1:15-cv-0113-JLH/PSH, 2016 WL 1050268 (E.D. Ark. Mar. 16, 2016). This position is based on the fact that Administrative Directive 14-16 only explicitly instructs inmates to appeal grievances if the response received is unsatisfactory or if no response is received at all. *Id.*

Other courts have determined that appealing a grievance to the conclusion of the grievance

10

procedure is necessary, even if favorable responses are received, if the inmate intends to file a civil rights lawsuit. *See Robinson v. Straughn*, No. 5:19-cv-0010-DPM, 2019 WL 3891018, at *1 (E.D. Ark. Aug. 16, 2019); *Mason v. Corizon, Inc.*, No. 6:13-cv-6110-SOH, 2014 WL 4771862, at *2 (W.D. Ark. Sept. 24, 2014); *see also Green*, 2018 WL 3018213, at *2 (finding full exhaustion where the inmate appealed a favorable grievance response and described the reason for appeal as "[c]ompleting my remedies"), *report and recommendation adopted*, 2018 WL 3016916.

It is clear that Administrative Directive 14-16 warns inmates that "they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit. . . . If this is not done, their lawsuits or claims may be dismissed immediately." (ECF No. 48-2, p. 17). The question becomes whether this warning, coming on page seventeen of the directive—and following multiple pages that only instruct inmates to appeal grievances when a dissatisfactory response is received, or no response is received at all—sufficiently puts inmates on notice of how they must exhaust. Judge Bryant recommends that the Court answer this question negatively, reasoning that the directive is "so opaque" as to be practically "incapable of use," and therefore, unavailable with respect to favorably answered grievances. Respectfully, the Court reaches a different conclusion.

The summary judgment evidence shows that Plaintiff failed to fully exhaust any grievance against the ADC Defendants. Courts must dismiss a case when a plaintiff has not fully exhausted his available administrative remedies before filing suit. *Ross*, ___ U.S. ___, 136 S. Ct. 1850, 1858-59, 1862 (2016). There does not appear to be "any ADC requirement that a grievance resolved on the merits must be appealed—unless the inmate disagrees with the result and wants to pursue his administrative remedies further." *Robinson v. Straughn*, No. 5:19-cv-0010-DPM-JJV, 2019 WL 3889635, at *4 (E.D. Ark. June 21, 2019), *report and recommendation adopted*, 2019 WL

3891018. That appears to have been the case here.

The ADC Defendants argue persuasively that Plaintiff was obviously not satisfied with the responses he received to his grievances, given that he filed this section 1983 lawsuit roughly a month later. This assumption is further supported by Plaintiff's response brief to the ADC Defendants' summary judgment motion, which argues that, following his receipt of favorable grievance responses, his remaining administrative remedies were unavailable to him because Administrative Directive 14-16 explicitly does not allow inmates to seek money damages through grievances. (ECF No. 31, p. 6). That Plaintiff was, at that time, wanting to seek money damages and knew that he could not do so through the grievance process, says to the Court that he was not satisfied with the grievance responses he received and wanted further relief in the form of money damages. "Complete exhaustion was therefore required regardless of the relief offered through administrative procedures." *Robinson*, 2019 WL 3891018, at *1 (rejecting the argument that an inmate is not required to appeal a favorable grievance response when the inmate's objections to the report and recommendation indicated that, during the grievance process, he planned to file a federal lawsuit about the issues discussed in the grievance).

To be clear, the Court shares some of the same concerns as Judge Bryant regarding the clarity of language used in Administrative Directive 14-16, which is, at best, confusingly worded. The directive repeatedly instructs inmates to appeal grievance responses if they are not satisfied or if they receive no response. No mention is made of whether an inmate must appeal a favorable grievance response or if the inmates' remedies are exhausted upon receipt of a favorable response. Thus, it is unclear throughout most of the directive what, if anything, an inmate must do if they receive a favorable grievance response. Only on page seventeen does the directive finally warn inmates that they must fully exhaust to be able to file a federal civil rights lawsuit.

However, although not ideally structured, the Court does not find Administrative Directive 14-16 to be "so opaque" as to be practically "incapable of use" with respect to an inmate who receives a favorable grievance response. The PLRA has eliminated an earlier requirement in 42 U.S.C. § 1997e(a) that "administrative remedies be *plain*, speedy, and effective." *Ross*, ___ U.S. ___, 136 S. Ct. at 1858 (emphasis added). As a result, grievance "procedures need not be sufficiently 'plain' as to preclude any reasonable mistake," as long as an "ordinary prisoner can make sense of what it demands." *Id.* at 1859. Given the plain text of Administrative Directive 14-16's warning that inmates must fully exhaust all remedies before filing a federal lawsuit, and the fact that the directive was available to Plaintiff (as is evident from his knowledge that the directive explicitly disallows inmates from seeking money damages through a grievance), the Court must conclude that the "ADC's administrative scheme was not practically incapable of use."[4] *Muhammad v. Mayfield*, 933 F.3d 993, 1001-03 (8th Cir. 2019). Plaintiff planned to seek money damages through a federal lawsuit, so he had to fully exhaust his remedies, even if his appeals consisted of nothing more than a message that he was appealing to exhaust his remedies.

The Court recognizes that "[t]his is a harsh result required by precedent." *Robinson*, 2019 WL 3891018, at *1. Nonetheless, the ADC Defendants are entitled to summary judgment on Plaintiff's remaining claims against them, which should be dismissed without prejudice for failure to exhaust. *Reed v. Anderson*, No. 5:11-cv-0111-DPM/JTR, 2011 WL 4709884, at *2 (E.D. Ark. Sept. 9, 2011) (citing *Barbee v. Corr. Med. Servs.*, 394 F. App'x. 337, 338 (8th Cir. 2010)). The Court declines to adopt the Report and Recommendation to the extent that it recommends

---

[4] It is neither the Court's place nor desire to interfere with the administrative workings of the ADC, but a revised grievance policy could clear up any possible uncertainty regarding what, if anything, is required to fully exhaust for ADC inmates who receive favorable responses at an intermediate stage of the grievance process. This would benefit inmates by better informing them of their responsibilities regarding exhaustion and would also further the PLRA's policy objective of allowing prison issues to be brought to the attention of prison officials, who would then have an opportunity to resolve the problem without the need to involve the courts.

otherwise.

### 2. The Medical Defendants' Summary Judgment Motion

The Medical Defendants also seek summary judgment on all claims against them, for the same reason as discussed in the previous section.[5] Judge Bryant's findings and recommendations, and the Medical Defendants' objections thereto, are also the same as above.

For the reasons discussed in the preceding section, the Court finds that the Medical Defendants are entitled to summary judgment on Plaintiff's remaining claims against them, which should be dismissed without prejudice for failure to exhaust. The Court declines to adopt the Report and Recommendation to the extent that it recommends otherwise.

### III. CONCLUSION

For the above-discussed reasons, the Court finds that, after *de novo* review of all specific objections and, finding no clear error on the face of the record as to all un-objected to issues, the instant Report and Recommendation (ECF No. 59) should be and hereby is **ADOPTED IN PART**.

Accordingly, the motion to dismiss based on sovereign immunity (ECF No. 18) is hereby **GRANTED**. Plaintiff's official capacity claims against Defendants Wendy Kelley, DeAngelo Earl, and Anthony Jackson are **DISMISSED WITH PREJUDICE**. The Court, on its own motion, finds that Plaintiff's official capacity claims for money damages against Defendant Scott Harder should be and are **DISMISSED WITH PREJUDICE**.

The ADC Defendants' motion for summary judgment (ECF No. 48) is hereby **GRANTED**. Plaintiff's remaining claims against Defendants Wendy Kelley, DeAngelo Earl, Anthony Jackson, and Scott Harder are **DISMISSED WITHOUT PREJUDICE**.

---

[5] Plaintiff does not appear to have specifically named any of the Medical Defendants in his grievances OR-19-00663 and OR-19-00664. Thus, it is possible that the Medical Defendants would be entitled to summary judgment for failure to exhaust on that basis. However, they did not explicitly make that argument in their summary judgment motion, so Judge Bryant and this Court are not called upon to make that determination.

The Medical Defendants' motion for summary judgment (ECF No. 23) is also **GRANTED**. Plaintiff's remaining claims against Defendants Jason Kelley, Crystal McCoy, and Cassandra Branson are **DISMISSED WITHOUT PREJUDICE**.

Plaintiff's claims against Defendant Nurse Amanda remain.[6]

**IT IS SO ORDERED**, this 24th day of August, 2020.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

---

[6] There is no proof of service in the record for Defendant Nurse Amanda. Two previous attempts to serve her have been unsuccessful. The Court notes that on August 20, 2020, Judge Bryant issued an order directing Plaintiff to provide an address for service or additional identifying information for Defendant Nurse Amanda by no later than September 10, 2020. (ECF No. 71). That order also warned that if Plaintiff fails to produce any information by the deadline, his claims against Defendant Nurse Amanda will be dismissed.